**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

IN IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JUL 25 2024

**TAMMY H. DOWNS, CLERK**
By: _____
DEP CLERK

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. **4:24-cv-634-LPR** |
| v. | ) ) | |
| APEX TOWNE COUNTRY LLC and ORON ZARUM, | ) ) ) | This case assigned to District Judge **Rudofsky** and to Magistrate Judge **Harris** |
| Defendants. | ) ) | |

---

## VERIFIED COMPLAINT FOR APPOINTMENT OF RECEIVER, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, BREACH OF CONTRACT, FORECLOSURE, AND OTHER EQUITABLE AND LEGAL RELIEF

---

Plaintiff Federal National Mortgage Association, by and through its undersigned counsel, for its Verified Complaint against Defendants Apex Towne Country LLC ("Borrower") and Oron Zarum ("Guarantor" and collectively with Borrower, "Defendants"), alleges as follows:

### PARTIES

1.      Plaintiff Federal National Mortgage Association ("Fannie Mae") is the current owner and holder of the Note and Mortgage. Fannie Mae is a corporation organized and existing under the laws of the United States and is a citizen of the District of Columbia for purposes of jurisdiction. 12 U.S.C. § 1717(a)(2)(B). Fannie Mae is a government-sponsored enterprise and a federally chartered entity that Congress created to enhance the nation's housing-finance market. Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental

housing. Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain government sponsored enterprises including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq*. Among other powers, Congress granted the Director of FHFA the authority to place Fannie Mae into conservatorship under certain, statutorily defined conditions, which the Director did in 2008. As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae. FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law. *See, e.g*., 12 U.S.C. § 4617(f). As Conservator, FHFA succeeded to all of Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as Conservator is statutorily empowered to "preserve and conserve [Fannie Mae's] assets and property," to "operate" Fannie Mae, to "perform all [of Fannie Mae's] functions in [Fannie Mae's] name," and to "collect all obligations and money due" Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions ... as a conservator." 12 U.S.C. § 4617(f).

2.    The Housing and Economic Recovery Act of 2008 ("HERA") provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." *See* 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third-party that affects Fannie Mae's interest in a loan agreement, note or deed of trust owned by Fannie Mae or under which Fannie Mae is beneficiary.

3.    FHFA has represented to Fannie Mae that FHFA supports this action in mortgage foreclosure as set forth herein and that FHFA reserves its rights as to any other or different terms

4857-1806-0978v8
2903115-000162

that may be imposed herein inconsistent with the rights, titles, powers, privileges and functions of FHFA under HERA. FHFA retains all of its federal powers, functions and protections including the right to assert such powers and protections to preclude the restraint of Conservator powers or functions as to Fannie Mae. All of FHFA's and Fannie Mae's rights, titles, powers, privileges, and protections under federal law are preserved.

4.    Upon information and belief, Defendant Apex Towne Country LLC is an Arkansas limited liability company and is compromised of the following members: Oron Zarum, a New Jersey citizen, Samuel Pels, a New York citizen, David Ritvo, a California citizen, Heidi Rebecca Burkhart, a North Carolina citizen, David Berger, a New York citizen, Eliezer Ritvo, a New York citizen, Barry Perlstein, a New York citizen, Apex Towne Country Investors LLC, Whisper Holdings LLC, and Midwood Investors LLC. Upon information and belief, Apex Towne Country Investors LLC is New Jersey limited liability company comprised of Allen Azoulay, a New Jersey citizen. Upon information and belief, Whisper Holdings LLC is a New York limited liability company comprised of Shmily Friedman, a New York citizen. Upon information and belief, Midwood Investors LLC is a New York limited liability company comprised of Zev Pollak, a New York citizen.

5.    Upon information and belief, Defendant Apex Towne Country LLC may be served with process through its registered agent, VCorp Agent Services, Inc., at 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

6.    Upon information and belief, Defendant Oron Zarum is an adult resident of the state of New Jersey and may be served with process at 10 Hill Street, Newark, New Jersey 07102.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

8.     Fannie Mae is deemed to be a citizen of the District of Columbia for purposes of diversity jurisdiction pursuant to 12 U.S.C. § 1717(a)(2)(B).

9.     For the purposes of diversity jurisdiction, upon information and belief, Borrower is a citizen of California, New Jersey, New York, and North Carolina. Defendant Oron Zarum is a citizen of New Jersey. No Defendant is a citizen of the District of Columbia.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 83(a)(1) and 1391(b)(2) because the property that is the subject of this action is situated in Little Rock, Pulaski County, Arkansas.

## FACTS

**A.     Introduction.**

11.     Borrower owns and operates the residential apartment complex commonly known as The Summit at Towne and Country located at 770 N Chicot Road, Little Rock, Arkansas 72209 (the "Property") on which Fannie Mae holds a mortgage.

12.     Fannie Mae files the instant action to, among other things, protect its security interest in the Property and the improvements thereon, including the Property, all personal property, rents, income, revenues, issues and profits thereof, specifically described in the Security Instrument (as defined below).

13.     Based upon the terms of the Loan Documents (as defined below), Borrower's express consent to the appointment of a receiver upon default, and applicable Arkansas law

4

governing receiverships, Fannie Mae is entitled to the immediate appointment of a receiver for the Property in order to protect the Property from waste, preserve the value of the Property, and account for and collect the rents, issues, profits, and revenues generated from the Property.  In addition, the Court should grant the requested temporary restraining order and injunctive relief to further protect Fannie Mae's secured interest in the Property and rents arising from the Property.

**B.      The Loan Documents and Related Agreements.**

14.      On or about September 30, 2020, Borrower executed a Multifamily Note (the "Note") for the benefit of Berkadia Commercial Mortgage LLC ("Berkadia"), the original lender under the Note.  Under the terms of the Note, Borrower agreed to pay the holder of the Note (the "Lender") the sum of $5,984,000.00 plus interest (the "Loan").  A true and correct copy of the Note is attached hereto as **Exhibit A**.

15.      On or about September 30, 2020, Borrower and Berkadia entered into a Multifamily Loan and Security Agreement (the "Loan Agreement").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.  Pursuant to Schedule 2 of the Loan Agreement, the Borrower was required to make monthly payments on the loan to the Lender on the first day of each month beginning November 1, 2020 (the "Monthly Payments"). The Maturity Date for full payment of the Loan is October 1, 2030, or any earlier date on which the unpaid principal balance of the Loan become due and payable by acceleration or otherwise.

16.      To secure repayment of the indebtedness evidenced in the Note and performance of all covenants and conditions contained therein, Borrower granted to the Lender a first priority security interest in, among other things and without limitation, the real property, all buildings, structures, improvements, and alterations constructed or at any time in the future constructed or placed upon the Property, together with all rents, revenues, and income thereof as well as all

5

personal property including equipment, inventory, and general intangibles used in connection with the ownership, management, or operation of the Property (collectively, "Mortgaged Property") pursuant to that certain  Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 30, 2020 (the "Security Instrument") in the amount of $5,984,000.00, which was duly recorded in the Official Records of the Circuit Court of Pulaski County, Arkansas ("Recording Office") on October 7, 2020 as Instrument Number 2020065910. A true and correct copy of the Security Instrument is attached hereto as **Exhibit C**.

17.     As further security for the Note, on September 30, 2020, Oron Zarum ("Guarantor") executed that certain Guaranty of Non-Recourse Obligations to the benefit of Berkadia (the "Guaranty Agreement").  A true and correct copy of the Guaranty Agreement is attached hereto as **Exhibit D**.

18.     Pursuant to the Guaranty Agreement, Guarantor "absolutely, unconditionally, and irrevocably guarantee[d] to Lender the full and prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of all amounts, obligations and liabilities owed to Lender under Article 3 (Personal Liability) of the Loan Agreement." *See* Exhibit D, ¶ 3(a).

19.     Paragraph 4 of the Guaranty Agreement further states that "[t]he obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any recorded release or reconveyance of the Security Instrument or any release of any other security for any of the Indebtedness." *Id.* at ¶ 4.

20.     Pursuant to the Security Instrument and to further secure Borrower's obligations under the Note, Borrower granted to the Lender assignment of all Rents related to the Property, as defined in the Security Instrument ("Rents"). *See* Exhibit C §§ 1 and 3.

6

21.    Pursuant to Section 14.01 of the Loan Agreement, upon the occurrence of an Event of Default, the Borrower's license to collect rents automatically terminates, and Lender is entitled to receive all Rents as they become due and payable.  To that end, under Section 3(c) of the Security Instrument, Borrower agreed to pay any such Rents over to Lender.

22.    Additionally, in Section 3(e) of the Security Agreement, Borrower consented to the *ex parte* appointment of a receiver by the Court in the Event of Default.  The Security Agreement expressly states in relevant part as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property…If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law.

Exhibit C, Sec. 3(e).

23.    Collectively, the Note, the Loan Agreement, the Security Instrument, the Guaranty Agreement, and all other documents referring to, relating to, or evidencing the Loan are hereinafter referred to as the "Loan Documents," and any capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Loan Documents.

**C.    Assignment of the Loan Documents to Fannie Mae.**

24.    On September 30, 2020, Berkadia assigned the Security Instrument to Fannie Mae pursuant to that certain Assignment of Security Instrument ("Security Instrument Assignment") dated September 30, 2020 and recorded on October 7, 2020 as Instrument Number 2020065945 in the Recording Office.  A true and correct copy of the Security Instrument Assignment is attached hereto as **Exhibit E**.

7

25.     On September 30, 2020, Berkadia assigned to Fannie Mae that certain Assignment of Collateral Documents and Other Loan Documents (the "Collateral Agreements Assignment"), which assigned agreements including the Loan Agreement, the Guaranty Agreement, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the Collateral Agreements Assignment is attached hereto as **Exhibit F**.

26.     Fannie Mae is in possession of the original Note, indorsed in blank, which is attached hereto as Exhibit A. By virtue of Fannie Mae's possession of the original Note, as well as the Security Instrument Assignment, Fannie Mae is the mortgagee, and owner and holder of the Note and the Security Instrument.

27.     Fannie Mae's security interest was perfected by the UCC Financing Statement filed with the Arkansas Secretary of State on November 23, 2020, as File ID 40000220208866 (the "State Financing Statement"). A true and correct copy of the State Financing Statement is attached hereto as **Exhibit G**.

28.     Fannie Mae's security interest was also perfected by the UCC Financing Statement filed with the Recording Office on October 7, 2020 as Instrument Number 2020065946 (the "County Financing Statement"). A true and correct copy of the County Financing Statement is attached hereto as **Exhibit H**.

**D.     Defaults, Fees, and Remedies under the Loan Documents.**

29.     Under Section 14.01(a)(1) of the Loan Agreement, any failure by the Borrower to pay or deposit when due any amount required by the Note, the Security Instrument, or any other Loan Document is deemed an automatic "Event of Default." Exhibit B. This includes failure to pay the Monthly Payments.

30.    Under Section 5 of the Security Agreement, following an Event of Default, the Lender may declare the entire amount of the indebtedness immediately due and payable, may institute foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and Arkansas law.  Exhibit C § 5.

31.    In addition, Lender is entitled to

all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; . . . costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the Loan Documents) of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 5, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, [or] any Foreclosure Event . . . shall be so much additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

Exhibit C § 5(d).

32.    Under Section 2.02(d)(1)(A) of the Loan Agreement, if any principal, interest, or other indebtedness due under the Loan Documents remains past due for thirty (30) days or more, then interest on such unpaid amount(s) shall accrue from the date payment is due at the "Default Rate." *See* Exhibit B. The Default Rate is defined in the Loan Agreement to be the lesser of "the sum of the Interest Rate plus four (4) percentage points" or "the maximum interest rate which may be collected from Borrower under applicable law." *See id.*, Schedule 1.

9

33.     Additionally, under Section 2.02(c) of the Loan Agreement, if any amount payable under the Loan Agreement is not received by Lender within ten days of the due date, the Borrower is required to pay Lender a late charge. Exhibit B. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate.

34.     Furthermore, pursuant to the Mortgage Agreement, the Borrower agreed to pay all Indebtedness, including all Enforcement Costs, which include, among other things:

> All expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

Exhibit C § 1.

35.     For purposes of this Verified Complaint, all the amounts owed by Borrower to Fannie Mae under the Loan Documents shall collectively be referred to herein as the "Indebtedness." Under the Loan Documents, in addition to the Indebtedness, Borrower is obligated to reimburse Fannie Mae for costs and expenses incurred by Fannie Mae in connection with the Indebtedness, including, without limitation, attorneys' fees and other costs of collection, and costs of insuring, protecting, maintaining, and/or disposing of the Property (together with the Indebtedness, collectively, all such amounts are referred to herein as the "Obligations").

**E.     The Existing Defaults.**

36.     On March 1, 2024, the Borrower failed to pay the Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default

4857-1806-0978v8
2903115-000162

under the Loan Documents, entitling Fannie Mae to exercise all its rights and remedies under the Loan Documents.

37.     As of the filing of this Complaint, the Borrower still has not paid the Monthly Payment, as required under the Loan Documents, that has been due and owing since March 1, 2024.

38.     Borrower's failure to make payment constituted an automatic Event of Default as defined in Section 14.01(a) of the Loan Agreement, thereby entitling Fannie Mae to accelerate the Loan. *See* Exhibit B.

39.     Fannie Mae's counsel, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, sent a Notice of Acceleration and Demand to Borrower and Guarantor on March 20, 2024 (the "Notice of Acceleration"), which notified Borrower and Guarantor that Fannie Mae had accelerated the Loan (the "Accelerated Amount"), stating in pertinent part: "pursuant to Section 14.02(a) of the Loan Agreement, Section 4 of the Note, and Section 5 of the Security Instrument, all amounts due under the Loan have been accelerated and are fully due and payable to Fannie Mae." A true and correct copy of the Notice of Acceleration is attached hereto as **Exhibit I**.

40.     The Notice of Acceleration further stated:

UNDER THE SECURITY INSTRUMENT EXECUTED BY BORROWER IN FAVOR OF FANNIE MAE, BORROWER'S LICENSE TO COLLECT RENTS HAS TERMINATED, AND FANNIE MAE IS NOW ENTITLED TO ALL RENTS AS THEY BECOME DUE AND PAYABLE, INCLUDING RENTS CURRENTLY DUE AND UNPAID. UNTIL FURTHER NOTICE, ANY RENTS BORROWER RECEIVED OR RECEIVES AFTER THE MATURITY DATE SHALL BE RECEIVED AND HELD BY BORROWER IN TRUST FOR THE BENEFIT OF FANNIE MAE. UNTIL FURTHER NOTICE, ALL SUCH RENTS SHALL BE APPLIED ONLY TO BONA FIDE CURRENT OPERATING EXPENSES TO THIRD PARTIES IN CONNECTION WITH THE OPERATION OF THE PROPERTY WITH EXCESS PAID TO FANNIE MAE, TO BE APPLIED IN ACCORDANCE WITH THE LOAN DOCUMENTS.

11

41.    Borrower and Guarantor failed to pay the amounts due under the Loan Documents, including the Accelerated Amount.

42.    The unpaid principal amount of the Loan as of July 18, 2024 was $5,954,449.45, excluding past due interest, charges and fees.

**F.    Receivership.**

43.    Upon the occurrence of an Event of Default, the Borrower acknowledged repeatedly in the Loan Documents that Plaintiff is entitled to the *ex parte* appointment of a receiver to oversee the Property.

44.    Section 7.02(a)(2) of the Loan Agreement states that the Borrower shall "surrender possession of the Mortgaged Property, including all Leases and all security deposits and prepaid Rents, immediately upon appointment of a receiver or Lender's entry upon and taking of possession and control of the Mortgaged Property." Exhibit B.

45.    Under Section 3(e) of the Mortgage Agreement, "if an Event of Default has occurred. . . Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3 . . . [and] Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law." Exhibit C.

46.    Under Section 3(e) of the Mortgage Agreement, the Borrower further agreed to "shortened time consideration of a motion to appoint a receiver." *Id.*

47.    Finally, under Section 3(e) of the Mortgage Agreement, the Borrower-Defendant further agreed that, "[i]mmediately upon appointment of a receiver . . . possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic

media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable." *Id.*

## CAUSES OF ACTION

### COUNT I – APPOINTMENT OF A RECEIVER

48.     Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

49.     Pursuant Ark. Code Ann. § 16-117-207(a), the Court may appoint a receiver upon application by a party in writing.

50.     In particular, Ark. Code Ann. § 16-117-207(a) states as follows:

> In an action . . . by a creditor to subject any property or fund to his or her claim, . . . on the application of plaintiff . . ., and where it is shown that the property or fund is in danger of being lost, removed, or materially injured, the court may appoint a receiver to take charge thereof during the pendency of the action, and may order and coerce the delivery of the property to him or her.

Ark. Code Ann. § 16-117-207(a).

51.     Fannie Mae is also entitled to the appointment of a receiver under Ark. Code Ann. § 16-117-208, which states:

> In an action by a mortgagee for the foreclosure of his mortgage, and the sale of the mortgaged property, a receiver may be appointed where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the conditions of the mortgage have not been performed and that the property is probably insufficient to discharge the mortgage debt.

Ark. Code Ann. § 16-117-208.

52.     On or about May 13, 2024, a Property Condition Assessment determined the Property is in inferior condition, and is substandard when compared to properties of similar age and construction type.  A true and correct copy of the Property Condition Assessment is attached as **Exhibit J**.

13

53.     The Property Condition Assessment revealed the Property is in need of immediate repairs, which have an estimated cost of $994,257.00.  Some of the property conditions could affect the safety of the residents.  The immediate repairs include, *inter alia*, the following:

     i.    14 of the 112 apartment units in the Property are uninhabitable due to mold, missing/damaged drywall, appliances, flooring, fixtures, water heaters, and/or HVAC equipment from prior sanitary backups and/or roof leak structures;

     ii.    13 of the 112 apartment units in the Property are vacant and have missing or damaged  appliances, water heaters and/or HVAC equipment, as well as damaged drywall, water staining and bubbling from old roof leaks, poor paint finishes, damaged cabinetry and countertops;

     iii.    88 of the 112 apartment units have wood fireplaces in the living room, and carbon monoxide detectors were not observed at any of fireplace units inspected;

     iv.    A significant number of apartment units in the Property have signs of water intrusion and suspect mold due to roof leaks, and the Property management did not produce a Mold and Moisture Plan for the Property;

     v.    10 apartment unit windows were broken due to apparent tenant abuse, vandalism, and/or squatters;

     vi.    The fire extinguishers in the Property's common areas have inspection tags that expired in December 2022;

     vii.    The Property buildings have warped roofing and significant fascia, soffit, and gutter damages due to reported storm damages and improper repairs.  Vegetative debris was also observed in several gutters due to a lack of routine maintenance;

     viii.    Hot water heaters lack proper temperature and pressure relief (TPR) valve piping due to improper installation at time of replacement; and

     ix.    Repeated issues with sewage backups at units due to a lack of routine drain cleaning or possible sanitary line failures.

54.     On or about June 9, 2024, the property manager currently overseeing the Property submitted a 90-day notice of termination of their management agreement with Borrower ("Notice of Termination"), which notified the Borrower of the termination of the property manager's

4857-1806-0978v8
2903115-000162

services effective September 10, 2024. A true and correct copy of the Notice of Termination is attached hereto as **Exhibit K**.

55.    Section 3(e) of the Security Instrument provides that, upon the occurrence of any Event of Default, Fannie Mae's remedies include, without limitation, the appointment of a receiver ("Receiver"). *See* Exhibit C, § 3(e). Pursuant to Section 3(e) of the Security Instrument, Borrower expressly consented to such appointment. *Id.*

56.    Fannie Mae requests that the Court appoint Tarantino Properties, Inc. ("Tarantino") as the Receiver for the Mortgaged Property. Tarantino and its principals have extensive experience in multifamily real estate asset management, as well as significant experience as a court-appointed receiver in Arkansas and states throughout the country. Sal Thomas of Tarantino will be the primary contact person for Tarantino.

57.    Pursuant to Section 3 of the Security Instrument and this Court's equitable powers, Fannie Mae requests that the Receiver have, at Borrower's expense, all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate, market, sell and otherwise use or permit the use of the Mortgaged Property, subject to Fannie Mae's approval (collectively, "Receiver's Powers"), including, without limitation, the power to:

> (a) enter upon and take possession and control of the Mortgaged Property, and to perform all acts necessary and appropriate for the operation and maintenance thereof;

> (b) take and maintain possession of all documents, books, records, papers and accounts relating to the Mortgaged Property;

> (c) exclude Borrower and its agents, servants and employees wholly from the Mortgaged Property, including changing any and all locks to the Mortgaged Property;

(d) allow Fannie Mae, its counsel, appraisers, and other independent third-party consultants engaged by Fannie Mae or its counsel access to the Mortgaged Property at all reasonable times to inspect the Mortgaged Property and all books and records, and to cooperate with Fannie Mae, its counsel, appraisers and other independent third-party consultants to evaluate the Mortgaged Property;

(e) manage and operate the Mortgaged Property under any existing name or trade name (or new name) if the Receiver deems appropriate to do so, subject to the consent of Fannie Mae;

(f) exercise any and all rights of Borrower and/or Fannie Mae (in any event subject to Fannie Mae's consent) in and to any and all license and/or franchise agreements;

(g) retain, hire or discharge on-site employees at the Mortgaged Property (none of whom are or shall be deemed to be employees of Fannie Mae) without any liability to the Receiver or Fannie Mae;

(h) establish pay rates for on-site employees at the Mortgaged Property;

(i) preserve, maintain, and make repairs and/or alterations (in an amount not to exceed to $20,000 without prior approval of Fannie Mae) to the Mortgaged Property;

(j) conduct a marketing or leasing program with respect to the Mortgaged Property, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Mortgaged Property under such terms and conditions as Fannie Mae may in its sole discretion deem appropriate or desirable;

(k) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Fannie Mae may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

(l) execute and deliver, as attorney-in-fact and agent of Borrower or in Borrower's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized by this Order;

(m) enter into such leases, whether of real or personal Mortgaged Property, or tenancy agreements, under such terms and conditions as Fannie Mae may in its sole discretion deem appropriate or desirable;

(n) collect and receive all Rents and Profits from the Mortgaged Property;

(o) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

16

(p) sue for unpaid Rents and Profits, payments, income or proceeds in the name of Borrower;

(q) maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent;

(r) compromise or give acquittance for Rents and Profits, payments, income or proceeds that may become due;

(s) determine and report to the Court and Fannie Mae whether any Rents and Profits previously received by Borrower have been used for purposes other than for the maintenance, management and expenses of the Mortgaged Property;

(t) require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders and employees of the Borrower to return any and all Rents and Profits in their possession;

(u) to open and review mail directed to Borrower and its representatives pertaining to the Mortgaged Property;

(v) analyze, determine and implement the best approach to maximize value from the Mortgaged Property for the benefit of Borrower's creditors and interest holders, including without limitation, marketing and selling the Property as a going concern, subject to Fannie Mae's prior written approval, provided, however, that in no event shall Receiver's power to sell the property, or any other power granted hereunder, in any way impair Fannie Mae's ability to exercise its rights and remedies under the Loan Documents, including, without limitation, the right to foreclose the Amended Security Instrument;

(w) facilitate the assumption of the Loan by a third party, subject to Fannie Mae's prior written approval;

(x) communicate, negotiate, and otherwise deal with any franchisor in order to secure the continuation, renewal and reinstatement of any existing franchise or license agreements (or to obtain new franchise or license agreements) pertaining to the Mortgaged Property, including the payment of any franchise or licensing fees, but only upon terms and conditions that are subject to Fannie Mae's approval;

(y) enter into contracts and agreements necessary to continue normal operations of the Mortgaged Property;

(z) amend, modify or terminate any existing contracts affecting the operations of the Mortgaged Property, but only upon terms and conditions that are subject to Fannie Mae's approval;

(aa) pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Mortgaged Property;

17

(bb) exercise all rights of Borrower in and to all government-issued permits, certificates, licenses or other grants of authority, to take all steps necessary to ensure the continued validity of such permits, certificates and licenses, and to take all steps necessary to comply with all requirements, regulations and laws applicable to the Mortgaged Property;

(cc) maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Arkansas in the Receiver's own name, as Receiver, from which the Receiver shall disburse all payments authorized by this Order;

(dd) receive and endorse checks pertaining to the Mortgaged Property, either in Receiver's name or in Borrower's name;

(ee) do any acts which Fannie Mae in its sole discretion deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable (as Fannie Mae in its sole discretion deem appropriate or desirable) to implement and effectuate the provisions of the Loan Documents.

58.     Pursuant to 3(e) of the Security Instrument, and as a result of Borrower's failure to meet the obligations under the Loan Documents as set forth above, including without limitation, the Events of Default, Fannie Mae is entitled to the immediate appointment of a receiver, and the Borrower has consented to such appointment upon the occurrence of the Events of Default.

59.     Fannie Mae asserts that a receiver is necessary to take control of the Mortgaged Property to receive and manage the Rents, to prevent any further waste and diminution in value of the Mortgaged Property, to protect the residents of the Property, and to protect the interest of Fannie Mae in the Mortgaged Property.

60.     Fannie Mae asserts that the Receiver shall not be liable for any obligation of Defendants relating to the Property that arose prior to the date of this Order, including, without limitation, any contingent or unliquidated obligations, taxes of any kind, assessments, utility charges, or goods or services provided to the Defendants, the Property or the Mortgaged Property, nor shall Fannie Mae or the Receiver be obligated to advance any funds to pay any expense of maintenance, operational short falls or other liability of the Property and Mortgaged Property.

Notwithstanding the foregoing, should Fannie Mae decide, in its discretion to advance funds to maintain or preserve the Property or Mortgaged Property, the repayment of all such funds shall be secured by the Loan Documents.

61.    Fannie Mae reserves the right to make future requests that the Court expand the Receiver's Powers should the same be deemed necessary.

62.    Fannie Mae requests that Rents and other revenues received from the operation of the Property be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incur as a result of serving as Receiver, for payment of insurance premiums and management fees authorized thereunder, to compensate Receiver for its services as receiver, and for payment of all Obligations.

63.    In accordance with the Security Instrument, the appointment of the Receiver should not impair or in any manner prejudice the rights of the Fannie Mae to receive payment of the Rents pursuant to the terms and provisions of the Loan Documents.

64.    Fannie Mae requests the receiver be authorized to remit to Fannie Mae all funds, profits, revenues, proceeds, and Rents that constitute collateral of Fannie Mae for application to the Indebtedness of Borrower under the Loan Documents, to the extent not expended for any of the purposes herein authorized.

65.    Fannie Mae requests that this Court enter an order providing that Receiver shall be paid the following monthly amounts: (i) Monthly Receivership Fee - $3,000.00 and (ii) Monthly Management Fee – the greater of (a) four percent (4%) of gross monthly collections or (b) $3,000.00 (collectively, the "Monthly Fees").  Fannie Mae also requests that the Receiver be entitled to recover a one-time set-up fee of $1,500.00 (the "One-Time Fee," and collectively with the Monthly Fees, the "Receiver Fee").

66.     Fannie Mae requests that the Court enter its order setting forth the process for paying the Receiver Fee to the Receiver from the operations of the Mortgaged Property.

## COUNT II – EXTRAORDINARY RELIEF – TEMPORARY RESTRAINING ORDER (FIRST REQUEST)

67.     Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

68.     Pursuant to the provisions of the Security Instrument and Fannie Mae's revocation of Borrower's right to collect the Rents, Fannie Mae is entitled to collect the Rents and apply the same in accordance with the Loan Documents.

69.     Fannie Mae revoked Borrower's license to collect Rents and has made demand for Borrower to hold the Rents. *See* Exhibit I, Notice of Acceleration.

70.     Borrower has failed to apply the Rents in accordance with the provisions of the Loan Documents, including its failure to pay outstanding principal and interest.

71.     Fannie Mae reasonably believes its interest in the Rents is endangered and likely to be lost or rendered inadequate without the entry of a temporary restraining order.

72.     Therefore, in addition to the rights granted Fannie Mae under the Loan Documents, the equities dictate that Fannie Mae be granted a temporary restraining order prohibiting Borrower and its agents from (i) transferring, selling, converting, assigning, or disposing of any Mortgaged Property; and (ii) removing, altering, and destroying any books, accounts, or records relating to the Mortgaged Property.

73.     Fannie Mae will suffer immediate and irreparable injury, loss, and damage unless Borrower is restrained as requested hereunder.

74.     Moreover, Fannie Mae is likely to prevail on the merits of this Verified Complaint and the balance of equities favors entry of a temporary restraining order.

20

75.    Unless such equitable relief is granted by the Court, the injuries, losses, and damages to Fannie Mae cannot be remedied by money damages alone.

76.    Because Fannie Mae has no adequate remedy at law and there is a substantial likelihood that it will prevail on the merits of this Verified Complaint, the temporary restraining order sought herein is appropriate.

## COUNT III – EXTRAORDINARY RELIEF – PRELIMINARY AND PERMANENT INJUNCTION (FIRST REQUEST)

77.    Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

78.    Fannie Mae has a first priority perfected security interest in the Mortgaged Property, and Fannie Mae possesses an absolute assignment of Rents.

79.    Based on the failure of Borrower to meet its obligations under the Note and the Loan Documents, Fannie Mae has a good faith basis for being gravely concerned about the protection and preservation of the Mortgaged Property.

80.    Indeed, Borrower's failure to make timely payment of the Indebtedness has adversely affected the Mortgaged Property, Fannie Mae's security for the Loan, and Fannie Mae's rights under the Loan Documents.

81.    Absent entry of a preliminary injunction restraining and enjoining Borrower its agents from collecting, transferring, or disposing of any of the Mortgaged Property, including the Rents, Fannie Mae reasonably believes that the Mortgaged Property, including the Rents, may be transferred, disposed, wasted, expended, converted, and destroyed in violation of the Loan Documents, thereby causing irreparable harm to Fannie Mae.

82.    As evidenced in the aforementioned factual allegations, Fannie Mae is likely to prevail on the merits of this action.

21

83. Fannie Mae has sustained and will continue to sustain immediate and irreparable injury as a result of Borrower's actions concerning collection of Rents and refusal to remit the same to Fannie Mae.

84. With respect to such conduct by Borrower, Fannie Mae has no adequate remedy at law.

85. The balance of the equities favors the issuance of a preliminary injunction in favor of Fannie Mae.

86. Accordingly, Fannie Mae requests this Court enter a preliminary injunction:

(a) prohibiting Borrower and its agents from disbursing, collecting, disposing, and converting any Rents;

(b) directing Borrower and its agents to account for all such Rents they have collected since default;

(c) further directing Borrower and its agents to remit all such Rents to the duly appointed Receiver;

(d) restraining and enjoining Borrower and its agents from collecting, transferring, disposing, wasting, and converting the Rents and other Mortgaged Property securing the Indebtedness owed;

(e) immediately, upon appointment of the aforesaid Receiver, directing Borrower and its agents to surrender possession of all the Mortgaged Property to said Receiver to allow said Receiver to operate the same; and

(f) immediately, upon appointment of the aforesaid Receiver, directing Borrower and its agents to turn over to said receiver all books, records, and accounts affecting the Mortgaged Property.

87. Upon hearing, Fannie Mae requests that the Court issue a permanent injunction prohibiting Borrower and its agents from transferring, converting, or disposing of any of the Rents and directing Borrower and its agents to remit to Receiver all Rents in Borrower and its agents' possession or subsequently received.

## COUNT IV – BREACH OF CONTRACT – BORROWER

88.     Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

89.     Borrower executed the Loan Documents that secure the Loan.

90.     As the owner and holder of the Note and the Security Instrument, Fannie Mae is entitled to enforce the Loan Documents.

91.     Under the Loan Documents, Borrower incurred various contractual obligations to Fannie Mae, including but not limited to the obligations to pay the full amount of the Indebtedness due and owing as of the Maturity Date, timely pay the expenses of operating and maintaining the Mortgaged Property, and turn over Rents to Fannie Mae upon default.

92.     Borrower has breached its Obligations to Fannie Mae under the Loan Documents by, among other things, failing to pay off the Loan on or before the Maturity Date and failing to turn over Rents to Fannie Mae upon default.

93.     Accordingly, Fannie Mae demands judgment against Borrower for breach of contract under the Loan Documents in an amount not less than $5,998,975.43, together with all accruing interest and costs, including, without limitation, default interest, prepayment premiums, attorneys' fees, and all expenses incurred by Fannie Mae in collecting the Loan Obligations.

## COUNT V – BREACH OF CONTRACT – GUARANTY AGREEMENT

94.     Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

95.     Guarantor executed the Guaranty Agreement that secures the Loan.

96.     Fannie Mae is the holder of the Guaranty Agreement and is entitled to enforce the Guaranty Agreement.

23

97.     Under the Guaranty Agreement, Guarantor incurred various contractual obligations to Fannie Mae, including to pay all amounts, obligations and liabilities owed to Fannie Mae under Article 3 of the Loan Agreement.  Exhibit D, ¶ 3.

98.     Guarantor has breached its Obligations to Fannie Mae under the Guaranty Agreement by, among other things failing to satisfy the Obligations under the Loan as of the Maturity Date, thereby causing damages to Fannie Mae.

99.     Accordingly, Fannie Mae demands judgment against Guarantor for breach of contract under the Guaranty Agreement in an amount not less than $5,998,975.43, together with all accruing interest and costs, including, without limitation, default interest, prepayment premiums, attorneys' fees, and all expenses incurred by Fannie Mae in collecting the Loan Obligations.

## COUNT VI – FORECLOSURE OF SECURITY INSTRUMENT

100.     Fannie Mae incorporates by reference the allegations set forth above as if set forth fully herein.

101.     Borrower executed the Loan Documents, including the Note and Security Instrument, and secured the Loan.

102.     As the owner and holder of the Note and the Security Instrument, Fannie Mae is entitled to enforce the Loan Documents.

103.     Borrower has failed to pay sums payable under the Note, including, without limitation, the full amount of the Indebtedness owed as of the Maturity Date, plus associated late charges, default interest, and attorneys' fees due and owing by Borrower in an amount not less than $5,998,975.43.  Such failure constitutes an Event of Default under Section 14.01 of the Loan Agreement.

24

104.    On March 20, 2024, Fannie Mae notified Borrower that the outstanding principal balance evidenced by the Note, together with all accrued and unpaid interest, late fees, and all other obligations due and owing under the Note and other Loan Documents, were immediately due and payable as a result of the expiration of the Maturity Date. *See* Exhibit I, Notice of Acceleration.

105.    Accordingly, the entire outstanding principal balance of the Loan, together with all accrued and unpaid interest, property protection advances, late charges, expenses of Fannie Mae, and all other amounts due under the Note and other Loan Documents is due. The current payoff amount of said obligation as of July 18, 2024 is $5,954,449.45, with interest continuing to accrue at the default rate of 7.06% per annum.

106.    Fannie Mae's right to foreclose is absolute due to Borrower's default.

107.    Pursuant to the terms and conditions of the Loan Documents, Fannie Mae is entitled to foreclosure of the Security Instrument.

108.    Fannie Mae requests that the Security Instrument be declared to be first and exclusive lien upon the Mortgaged Property, prior and paramount to the claims and liens of all other parties.

109.    Fannie Mae also requests that the purchaser(s) at the sale of the Mortgaged Property be decreed to have a right to immediate possession of the applicable property and be given a Writ of Assistance to be executed by the Clerk of this Court to enforce delivery of possession.

WHEREFORE, ABOVE PREMISES CONSIDERED, Plaintiff Federal National Mortgage Association respectfully requests that this Court:

A.    Issue process and summons to compel Defendants to appear and answer this Verified Complaint;

4857-1806-0978v8
2903115-000162

B.      Appoint Tarantino Properties, Inc. as receiver to take possession of the Mortgaged Property with responsibilities and authorities consistent with the Receiver's Powers as set forth herein;

C.      Grant a temporary restraining order, restraining Defendants from, among other things: (i) transferring, selling, converting, assigning, or disposing of any Mortgaged Property; and (ii) removing, altering, and destroying any books, accounts, or records relating to the Mortgaged Property;

D.      Grant preliminary and permanent injunctive relief which, among other things, (i) enjoins the Defendants from interfering with the duties of the receiver and/or Fannie Mae; (ii) directs that payment of all Rents, receipts and revenues to the receiver and/or Fannie Mae; and (iii) provides all other relief as requested herein and as may be necessary to preserve and protect the Mortgaged Property and in aid of the duties conferred on the receiver and/or Fannie Mae by this Court;

E.      If requested, direct the receiver to administer the Mortgaged Property in a manner which will not jeopardize the operation of the Mortgaged Property, while maximizing the amount realized by Fannie Mae from the Mortgaged Property;

F.      Enter judgment in favor of Fannie Mae on its breach of contract claims against Borrower and Guarantor in an amount to be determined at trial, to the fullest extent to which Fannie Mae is entitled under the Loan Documents;

G.      Enter a judgment of foreclosure; and

H.      Grant Fannie Mae any such other, further, or different relief to which the Court deems Fannie Mae entitled under the premises.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF.**

26

Respectfully submitted,

s/Robert F. Tom          TN BPR #36524

Robert F. Tom (Ark. Bar No. 2013026)
BAKER, DONELSON, BEARMAN
 CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  901.577.2159
Facsimile: 901.577.0818
rtom@bakerdonelson.com
*Counsel for Plaintiff Federal National Mortgage
Association*

27